# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2251-17T4

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

PRAMOD BHAGAT,

     Defendant-Appellant.

_____

Submitted December 11, 2018 – Decided January 11, 2019

Before Judges Geiger and Firko.

On appeal from Superior Court of New Jersey, Law Division, Bergen County, Accusation No. 08-10-1614.

Michael S. Allongo, attorney for appellant (Michael J. Cennimo, on the brief).

Dennis Calo, Acting Bergen County Prosecutor, attorney for respondent (Ian C. Kennedy, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Pramod Bhagat appeals the denial of his second petition for post-conviction relief (PCR) without an evidentiary hearing. We affirm.

I.

In August 2007, defendant engaged in online communications in a Yahoo chatroom with an undercover officer whom defendant believed to be a fourteen-year-old girl named "Sam" or "Samantha." During the course of the online conversations, defendant and the undercover officer discussed meeting for a movie date, kissing, and touching Sam underneath her shirt and skirt. Defendant intended to touch the vagina of the person he believed to be a fourteen-year-old girl. On August 23, 2007, defendant travelled to Upper Saddle River to meet Sam for the previously discussed movie date. Upon arrival to the address supplied by the undercover officer, defendant was arrested and found to have condoms on his person.

Defendant is not a citizen of the United States; he is a citizen of India. He resided in the United States as a permanent resident alien. He is fluent in English and highly educated, having obtained a master's degree in mathematics.

During a pre-indictment plea conference on October 22, 2008, the State offered defendant a plea agreement of pleading guilty to a single count of fourth-degree attempted criminal sexual contact with a victim at least thirteen but less

than sixteen years of age and a perpetrator more than four years older, N.J.S.A. 2C:14-3(b) and 2C:5-1, in exchange for a recommended sentence of non-custodial probation, undergoing a psychological evaluation, registration as a sex offender under Megan's Law, N.J.S.A. 2C:7-2, prohibition from visiting social media websites, and applicable fines and penalties. The plea offer did not include parole supervision for life. Defendant waived his right to an indictment and entered into the plea agreement during the conference, pleading guilty to an accusation.

During the plea hearing, defendant testified he reviewed, understood, and answered each question on the plea forms with the assistance of counsel. Specifically, question seventeen prompted: "Do you understand that if you are not a United States citizen or national, you may be deported by virtue of your plea of guilty?" Defendant circled "Yes" in response to that question. Question twenty-three asked: "Are you satisfied with the advice you have received from your lawyer?" Defendant circled "Yes" in response to that question.

Defendant was asked by the court, "do you understand that as a result of this guilty plea, you could be deported or have some other negative consequence impact your immigration status?" He answered, "Yes." The court also asked defendant: "Have you had enough time to talk to your attorney . . . about

everything, including the immigration consequences and everything else?" He answered, "Yes." The court further asked defendant if he was satisfied with his attorney's representation of him. He again replied, "Yes."

Defendant's testimony confirmed he had signed or initialed all eight pages of the plea forms, had read every question carefully and understood every question, and had enough time to discuss the matter with his attorney. When asked if he was "pleading guilty because you really are guilty," defendant answered, "Yes, I'm guilty."

During his plea allocution, defendant testified he "chatt[ed] on Yahoo" with a person who identified herself as a fourteen-year-old and who defendant reasonably believed was fourteen years old. Defendant admitted that during his chat room conversations with Sam, "some of the things that were said involved sexual acts or sexual activity." At the time of the conversations defendant was thirty-six years old. Defendant travelled to Upper Saddle River where he arranged to meet Sam with the purpose of going on a date, kissing, and touching the child's private parts, including her vagina. He admitted if "that had actually happened it could have impaired or humiliated a fourteen-year-old girl."

Defendant was initially hesitant to admit the full extent of his crime when he provided the factual basis for his plea, stating at one point, "I'm not that kind

of person." Appropriately, the prosecutor stated he could not accept that, expressing concern defendant might later attack the factual basis for the plea. The prosecutor stated defendant "has to plead to the elements of the crime." Defendant then admitted to committing the elements of attempted sexual contact by acknowledging his purpose in travelling to Saddle River "was to potentially touch the private parts of Samantha," and that at the time he arrived there it was his "intention" to "touch her vagina."

Defendant has no other criminal history. He was sentenced in accordance with the plea agreement on January 30, 2009. The judgment of conviction was entered on February 2, 2009. Defendant did not move to withdraw his plea either before or after sentencing. He did not appeal his conviction or sentence. Defendant subsequently violated probation (VOP) and was re-sentenced on December 14, 2012, to probation conditioned upon 180 days in jail. Defendant did not appeal his VOP conviction or sentence.

On April 4, 2016, defendant was served with a notice to appear by the Department of Homeland Security stating its intent to commence deportation proceedings based on defendant's "aggravated felony" conviction pursuant to 8 U.S.C. § 1227.

On July 21, 2016, defendant filed his first PCR petition. On November 28, 2016, the petition was dismissed without prejudice "pursuant to Rule 3:22-6A(3) for counsel's failure to file an amended petition establishing excusable neglect within 120 days." Through counsel, defendant filed his second PCR petition and supporting certification on March 31, 2017. Defendant asserted his plea counsel improperly advised him of the immigration consequences of his guilty plea because he was only told he "might be put in removal proceedings, not that [he] was pleading to an [a]ggravated [f]elony and that it was mandatory that [he] be deported." In addition, defendant certifies he also consulted with an immigration attorney regarding his immigration situation and was advised he would not be deported.

Defendant further certified that subsequent to his plea, he met with eleven immigration attorneys about renewing his permanent resident card and pursuing citizenship and none advised him to pursue PCR or that deportation was mandatory in light of his guilty plea. During oral argument, defendant expressed his intent to adduce testimony from his plea counsel and all eleven immigration attorneys he consulted. He also claimed he had an entrapment defense.

The PCR court heard oral argument on September 14, 2017, took the matter under advisement, and issued a December 8, 2017 order and ten-page

written decision denying defendant's second PCR petition without an evidentiary hearing. This appeal followed.

Defendant argues:

> POINT I
> THE COURT ERRED IN RULING THAT APPELLANT FAILED TO DEMONSTRATE EXCUSABLE NEGLECT SUFFICIENT TO JUSTIFY RELAXATION OF THE TIME BAR AT ISSUE.
>
> POINT II
> THE COURT ERRED IN RULING THAT PETITIONER FAILED TO ESTABLISH A COLORABLE CLAIM OF INNOCENCE BECAUSE THE COURT INCORRECTLY RULED THAT PETITIONER'S STATEMENTS CONSTITUTED AN ADMISSION OF GUILT, AND IMPLICIT[]LY RULED THAT THE FACTUAL BASIS FOR THE GUILTY PLEA WAS ADEQUATE, DESPITE FAILING [TO] ADDRESS PETITONER'S ARGUMENT THAT A NECESSARY ELEMENT OF THE OFFENSE, NAMELY THE INTENT TO HAVE SEXUAL CONTACT, WAS NOT ADMITTED IN THE CONTEXT OF THE GUILTY PLEA.
>
> POINT III
> THE COURT ERRED IN RULING THAT PETITIONER DEMONSTRATED NEITHER INEFFECTIVE ASSISTANCE OF COUNSEL NOR SUFFICIENT REASONS TO JUSTIFY WITHDRAWAL OF THE GUILTY PLEA DESPITE FAILING TO ADDRESS PETITIONER'S ARGUMENTS REGARDING THE ISSUE OF ENTRAPMENT.

7

POINT IV
THE COURT COM[M]ITTED PLAIN ERROR BY INCORRECTLY STATING IN THE WRITTEN OPINION THAT THE COURT'S DECISION WAS BASED IN PART ON "TESTIMONY ELICITED AT THE HEARING" WHEN NO HEARING ACTUALLY TOOK PLACE, THUS CAUSING ANY REASONABLE PERSON TO QUESTION THE ENTIRE DECISION. (NOT RAISED BELOW)

II.

PCR petitioners are not automatically entitled to an evidentiary hearing. State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999); R. 3:22-10(b). A PCR court need not grant an evidentiary hearing unless "a defendant has presented a prima facie case in support of PCR." State v. Jones, 219 N.J. 298, 311 (2014) (citing State v. Marshall, 148 N.J. 89, 158 (1997)). "To establish such a prima facie case, the defendant must demonstrate a reasonable likelihood that his or her claim will ultimately succeed on the merits." Marshall, 148 N.J. at 158. The court must view the facts "in the light most favorable to defendant." Ibid. (quoting State v. Preciose, 129 N.J. 451, 462-63 (1992)); accord R. 3:22-10(b). We conduct a de novo review when the PCR court did not hold an evidentiary hearing on the claim defendant now raises on appeal. State v. Jackson, 454 N.J. Super. 284, 291 (App. Div. 2018).

The PCR court held defendant's second petition was time-barred. After a careful review of the arguments in light of the record and the applicable principles of law, we affirm, but for different reasons than stated by the PCR court.[1] We affirm the denial of defendant's petition without an evidentiary hearing because this is his second petition for PCR and he fails to assert a cognizable claim for relief under Rule 3:22-12(a)(2).

Defendant's first petition for PCR was dismissed without prejudice on November 28, 2016. Defendant had ninety days to amend and refile his petition for it to "be treated as a first petition for [the] purposes of these rules." R. 3:22-12(a)(4). Defendant filed this petition on March 31, 2017. However, the ninety days afforded to defendant to refile his petition expired on February 27, 2017. R. 1:3-1. Thus, this petition must be evaluated under the rules for second or subsequent PCR petitions.

Rule 3:22-4(b)(1) mandates the dismissal of a "second or subsequent" PCR petition unless "it is timely under Rule 3:22-12(a)(2)[.]" Rule 3:22-12(a)(2) states:

---

[1] See State v. Heisler, 422 N.J. Super. 399, 416 (App. Div. 2011) (stating an appellate court is "free to affirm the trial court's decision on grounds different from those relied upon by the trial court").

Notwithstanding any other provision in this rule, no second or subsequent petition shall be filed more than one year after the latest of:

(A) the date on which the constitutional right asserted was initially recognized by the United States Supreme Court or the Supreme Court of New Jersey, if that right has been newly recognized by either of those Courts and made retroactive by either of those Courts to cases on collateral review; or

(B) the date on which the factual predicate for the relief sought was discovered, if that factual predicate could not have been discovered earlier through the exercise of reasonable diligence; or

(C) the date of the denial of the first or subsequent application for post-conviction relief where ineffective assistance of counsel that represented the defendant on the first or subsequent application for post-conviction relief is being alleged.

[Ibid.]

Defendant's second PCR petition is procedurally barred because he claims no newly recognized constitutional right. R. 3:22-12(a)(2)(A). Under the Sixth Amendment of the United States Constitution, a criminal defendant is guaranteed the effective assistance of legal counsel in his defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). To establish a deprivation of that right, a convicted defendant must satisfy the two-part test enunciated in Strickland by demonstrating that: (1) counsel's performance was deficient, and

(2) the deficient performance actually prejudiced the accused's defense.  Id. at 687; accord State v. Fritz, 105 N.J. 42, 58 (1987) (adopting the Strickland two-part test in New Jersey).

"Before deciding whether to plead guilty, a defendant is entitled to 'the effective assistance of competent counsel.'"  Padilla v. Kentucky, 559 U.S. 356, 364 (2010) (quoting McMann v. Richardson, 397 U.S. 759, 771 (1970); Strickland, 466 U.S. at 686).  Our Supreme Court adopted the following test for ineffective assistance of counsel claims in the context of a plea agreement:

> To set aside a guilty plea based on ineffective assistance of counsel, a defendant must show that (i) counsel's assistance was not "within the range of competence demanded of attorneys in criminal cases," Tollett v. Henderson, 411 U.S. 258, 266 (1973); and (ii) "that there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pled guilty and would have insisted on going to trial."  Hill v. Lockhart, 474 U.S. 52, 58 (1973).
>
> [State v. DiFrisco, 137 N.J. 434, 457 (1994) (alteration in original).]

Defendant must also show a decision to reject the plea would have been rational under the circumstances.  See State v. Maddon, 422 N.J. Super. 475, 486 (App. Div. 2011) (stating defendant must show "had he been properly advised, it would have been rational for him to decline the plea offer and insist on going to trial and, in fact that he probably would have done so").

A-2251-17T4

In Padilla, the United States Supreme Court held the Sixth Amendment's guarantee of a right to counsel requires defense counsel to advise their clients whether a guilty plea carries a risk of deportation. 559 U.S. at 374. Generally, trial counsel "need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences." Id. at 369. "But when the deportation consequence is truly clear" because "the terms of the relevant immigration statute are succinct, clear, and explicit," such that the removal consequences of a plea can "easily be determined from reading the removal statute," "the duty to give correct advice is equally clear." Id. at 368-69.

Upon review, our Supreme Court concluded Padilla established a new rule of constitutional law within the pre-existing ineffective assistance of counsel framework, which does not retroactively apply to cases on collateral review. State v. Gaitan, 209 N.J. 339, 371-72 (2012). In Chaidez v. United States, the United States Supreme Court also held Padilla does not have retroactive effect to cases on collateral review. 568 U.S. 342, 344, 347 (2013).

Defendant pleaded guilty and was sentenced prior to the decision in Padilla. He did not file a direct appeal. Instead, he seeks collateral review of his plea and conviction through PCR. Thus, by the clear edicts of Gaitan and

<u>Chaidez</u>, the new constitutional right adopted in <u>Padilla</u> does not apply to defendant's petition.

Defendant's second PCR petition was filed within one year of the notice of his immigration detainer. Thus, defendant's petition was arguably filed within one year of discovery of "the factual predicate for the relief sought." <u>R.</u> 3:22-12(a)(2)(B); <u>see also</u> <u>State v. Brewster</u>, 429 N.J. Super. 387, 399-400 (App. Div. 2013) (holding the defendant's PCR petition was time-barred under <u>Rule</u> 3:22-12(a)(2)(B) because he "consulted an attorney in 2007 and was advised that his 1998 conviction 'could be a problem'" yet waited until 2010 to seek post-conviction relief). Nevertheless, defendant's claim does not warrant relief because his plea counsel was not ineffective.

Since defendant's case reached finality prior to the Supreme Court's ruling in <u>Padilla</u>, collateral review of his conviction based on claims of ineffective assistance of counsel involving immigration consequences of a guilty plea falls under the standard adopted by our Supreme Court in <u>State v. Nuñez-Valdéz</u>, 200 N.J. 129 (2009). <u>Gaitan</u>, 209 N.J. at 373-74. <u>Nuñez-Valdéz</u> held an ineffective assistance of counsel claim could be based on the provision of "misleading, material information" about the immigration consequences of a defendant's guilty plea. 200 N.J. at 139-40.

Defendant claims his plea counsel provided misleading advice because she did not advise him that pleading to an offense that constituted an aggravated felony under federal immigration law would trigger mandatory deportation. We disagree.

Under federal immigration law, "[t]he term 'aggravated felony' means . . . murder, rape, or sexual abuse of a minor[.]" 8 U.S.C. § 1101(a)(43)(A). However, as this court has noted, it "d[oes] not define the phrase 'sexual abuse of a minor.'" State v. Telford, 420 N.J. Super. 465, 472 (App. Div. 2011). Notably, in Telford, this court held, even under the more stringent Padilla standard, it was "hardly 'clear,' 'explicit,' 'succinct' or 'straightforward'" defendant's deportation would "inexorably" result from his guilty plea to third-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a), for sex offenses committed against a thirteen-year old girl, especially when this court's "review of the case law . . . regarding the meaning of 'sexual abuse of a minor' . . . reveal[ed] a very definite split among the circuits." Id. at 467, 472, 475. "When the law is not succinct and straightforward[,] . . . a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences." Padilla, 559 U.S. at 369. Thus, in Telford, we concluded it was not ineffective assistance of counsel for the defendant's

attorney to advise him "that he 'might' rather than 'would' be deported." 420 N.J. Super. at 467.

We further note the defendant in <u>Nuñez-Valdéz</u> was subject to deportation as a result of his plea to fourth-degree criminal sexual contact of a seventeen-year-old girl. 200 N.J. at 140. In this case, defendant pleaded guilty to <u>attempted</u> criminal sexual contact.

More fundamentally, unlike in <u>Nuñez-Valdéz</u>, 200 N.J. at 141, plea counsel here did not did not assure defendant he would not be deported. On the contrary, according to defendant's own certification, plea counsel told him he "might be put in removal proceedings." This statement was not affirmatively misleading, particularly when viewed in conjunction with the language of the plea forms and the questions the judge posed to defendant during the plea hearing regarding immigration consequences. <u>Nuñez-Valdéz</u> "did not hold that advising a client he may be deported was incorrect or deficient legal advice." <u>Brewster</u>, 429 N.J. Super. at 397 (citing <u>Nuñez-Valdéz</u>, 200 N.J. at 138). Given these circumstances and this court's conclusion in <u>Telford</u> regarding the

ambiguity of the definition of "sexual abuse of a minor," plea counsel did not provide affirmatively misleading advice under the Nuñez-Valdéz standard.[2]

Defendant's second PCR petition is also procedurally barred because he does not allege ineffective assistance of prior PCR counsel. R. 3:22-12(a)(2)(C).

Defendant argues he established excusable neglect and enforcement of the time bar would result in a fundamental injustice. However, as discussed above, this is defendant's second PCR petition and that exception to the time limitations no longer applies to second PCR petitions. Jackson, 454 N.J. Super. at 294.

We reject defendant's claim that he did not provide an adequate factual basis for his plea. A perpetrator is guilty of criminal sexual contact if he purposefully and intentionally touches a victim's intimate parts, either directly or through clothing, intending to either degrade or humiliate the victim, or sexually arouse or gratify himself, N.J.S.A. 2C:14-1(d), and the victim is at least thirteen years old but less than sixteen years old and the perpetrator is at least four years older than the victim, N.J.S.A. 2C:14-2(c)(4). "Intimate parts" includes the genital area, groin, or breast of a person. N.J.S.A. 2C:14-1(e). In

---

[2] Although defendant alleges the first immigration attorney he consulted told him he would not be deported, incorrect advice by immigration counsel does not constitute ineffective assistance of criminal defense counsel. Nor does the advice given by immigration counsel after the plea was entered and defendant was sentenced.

the context of this case, a person is guilty of criminal attempt if they purposefully do anything which is an act "constituting a substantial step in a course of conduct planned to culminate in his commission of the crime." N.J.S.A. 2C:5-1(a)(3).

Defendant admitted to engaging in conversations with Sam, a person he believed to be a fourteen-year-old girl, for the purpose of meeting and engaging in sexual activities with her. He admitted driving to Saddle River to meet with Sam with the intention to touch her vagina. He admitted if that had actually happened it could have impaired or humiliated a fourteen-year-old girl. He was thirty-six years old at the time. We conclude the factual basis given by defendant was adequate.

Defendant also argues he had a potentially meritorious entrapment defense that was never raised by his trial counsel. We disagree. In State v. Davis, this court affirmed the defendant's conviction on "several counts of attempting to endanger the welfare of a child, endangering the welfare of a child, and attempted sexual assault" "after an undercover investigation revealed that he had conversed on the internet about sex and masturbation with an undercover officer who had portrayed herself as a fourteen-year-old girl." 390 N.J. Super. 573, 580 (App. Div. 2007). We rejected the defendant's entrapment defense

because "[n]othing prohibits the police from creating characters to conduct undercover investigations. Rather, 'decoys, traps, and deceptions properly may be used to apprehend those engaged in crime or to obtain evidence of the commission of crime.'" Id. at 593 (quoting State v. Rockholt, 96 N.J. 570, 575 (1984)).

Defendant participated in a series of chat room conversations with Sam, discussing in detail the sexual activities he sought to engage in with her. The record does not reflect that Sam controlled or directed the commission of the crime, or that Sam resorted to "'excessive inducements' to lure defendant." Ibid. (quoting State v. Johnson, 127 N.J. 458, 479 (1992)). Defendant has not demonstrated an entrapment defense would have carried any probability of success on these facts.

Finally, defendant also argues the PCR court's inaccurate statement regarding "having heard the testimony at the hearing" undermines its entire decision. We disagree. We consider the misstatement to be a mere scrivener's error that escaped detection. The PCR court noted it had conducted oral argument – not a testimonial hearing – on September, 14, 2017, the only day it conducted a proceeding in this matter.

To the extent they are unaddressed, defendant's remaining arguments lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION